UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

JOHN THEODORE HANCOCK, )
    Petitioner, )
  )
  )
v. )   Nos. 2:08-CR-75-JRG-DHI
  )        2:13-CV-252-JRG
UNITED STATES OF AMERICA, )
    Respondent. )

MEMORANDUM OPINION

This matter is before the Court on the motion of John Theodore Hancock ("petitioner" or "Hancock") To Vacate, Set Aside Or Correct Sentence Under 28 U.S.C § 2255, [Doc. 146].[1] The matter is ripe for review and the Court has determined that the files and records in the case conclusively establish that petitioner is not entitled to relief under § 2255 and, therefore, no evidentiary hearing is necessary. For the reasons which follow, petitioner's § 2255 motion lacks merit and will be DENIED.

I. **Procedural and Factual Background**

On August 12, 2008 the federal grand jury returned a three-count indictment, [Doc. 3]] which charged petitioner, a medical doctor, with health care fraud in violation of 18 U.S.C. § 1347 (Count 1), unlawfully dispensing methadone, a Schedule II controlled substance in violation of 21 U.S.C. § 841 (Count 2), and unlawfully dispensing alprazolam, a Schedule IV controlled substance in violation of 18 U.S.C. § 841 (Count 3). A superseding indictment was returned on September 9, 2008, [Doc. 6]. The superseding indictment contained 112 counts.

---

[1] All references are to docket entries in case No. 2:08-CR-75.

1

Counts 1, 2, 18, and 19 of the superseding indictment charged the petitioner with health care fraud resulting in the death of the patients named in those counts in violation of 18 U.S.C. §§ 1347 and 2. Counts 3-8, 10-17, 20-21, and 23-32 of the indictment charged the petitioner with health care fraud in violation of 18 U.S.C. §§ 1347 and 2. Counts 33 through 36 charged the petitioner with unlawfully dispensing controlled substances resulting in death in the use of such substances in violation of 21 U.S.C. §§ 841(a), 841(b)(1)(C) and 18 U.S.C. § 2. Counts 37-42, 44-51, 64-68, 75-81 and 83-90 charged the petitioner with unlawfully dispensing controlled substances in violation of 21 U.S.C. §§ 841(a), 841(b)(1)(C), 841(b)(1)(D) and 841(b)(2). Counts 50-63, 69-74, and 92-105 charged the petitioner with unlawfully dispensing controlled substances in violation of 21 U.S.C. §§ 841(a) and 841(b)(1)(C) or (b)(1)(D) or 841(b)(2). Counts 106 and 107 charged petitioner with money laundering in violation of 18 U.S.C. §§ 1957 and 2. Count 108 of the indictment charged petitioner with evasion of income tax during calendar years 1994 and 1995 in violation of 26 U.S.C. § 7203. Finally, Counts 109 through 112 charged petitioner with failure to file income tax returns for calendar years 2002, 2003, 2004 and 2005 in violation of 26 U.S.C. § 7203[2]

After significant pretrial motion practice and several continuances, the case proceeded to trial on July 6, 2009, [Doc. 79]. At the conclusion of the nine day trial, Hancock was found guilty of Counts 1-8, 10-18, 20-21, 23-42, 44-51, 53-66, 68-70, 72-81, 83-87, 89-90, 92-95, and 97-112 and not guilty of Counts 19, 67, 71, 88 and 96, [Doc.92]. A PSR was prepared and Hancock was sentenced on July 30, 2009 to a term or imprisonment of 276 months as to Counts 1 and 2; 120 months as to Counts 3, 4, 5, 6, 7, 8, 10, 11, 12, 13, 14, 15, 16, 17, 18, 20, 21, 23, 24, 25, 26, 27, 28, 29, 30, 31, 32, 106 and 107; 240 months as to Counts 33, 34, 35, 36, 37, 38, 39,

---

[2] The government later moved to dismiss Counts 9, 22, 43, 52, 82 and 91 and these counts were dismissed without prejudice on June 16, 2009.

40, 41, 42, 44, 45, 46, 47, 48, 49, 50, 51, 53, 54, 55, 56, 57, 58, 59, 60, 61, 62 and 63; 60 months as to Counts 64, 65, 66, 68, 69, 70, 72, 73, 74 and 108; 36 months as to Counts 75, 76, 77, 78, 79, 80, 81, 83, 84, 85, 86, 87, 89, 90, 92, 93, 94, 95, 97, 98, 99, 100, 101, 102, 103, 104 and 105; and 12 months as to Counts 109, 110, 111 and 112 to run concurrently, for a net sentence of 276 months. Judgment was entered on August 19, 2010, [Doc. 121].

Hancock appealed his convictions and sentence to the Sixth Circuit Court of Appeals, [Doc. 122]. The Sixth Circuit affirmed the Court's judgment in full on March 9, 2012, [Doc. 139]. Hancock's petition for writ of certiorari to the United States Supreme Court was denied on October 2, 2012, [Doc. 142]. The instant motion to vacate was filed on October 4, 2013, [Doc. 146]. United States responded in opposition on November 3, 2014, [Doc. 149].

The facts in the case were succinctly stated by the Sixth Circuit:

> Defendant operated a medical business known as "Hancock Family Medicine" in Mooresburg, Tennessee. Defendant prescribed controlled substances, including methadone, morphine, oxycodone (OxyContin), hydrocodone, and benzodiazepine, for patients without performing physical examinations and without determining whether the drugs were medically necessary. Most of the drugs were paid for through the TennCare program, Tennessee's program for indigent medical care. Several of defendant's patients died.

*United States v. John Theodore Hancock*, 473 Fed. App'x 424, at ** 1 (6th Cir. March 29, 2012).

## II. Standard of Review

This Court must vacate and set aside petitioner's sentence if it finds that "the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack, . . ." 28 U.S.C. § 2255. Under Rule 4 of the Governing Rules, the Court is to consider initially

3

whether the face of the motion itself, together with the annexed exhibits and prior proceedings in the case, reveal the movant is not entitled to relief. If it plainly appears the movant is not entitled to relief, the court may summarily dismiss the § 2255 motion under Rule 4.

When a defendant files a § 2255 motion, he must set forth facts which entitle him to relief. *Green v. Wingo*, 454 F.2d 52, 53 (6th Cir. 1972); *O'Malley v. United States,* 285 F.2d 733, 735 (6th Cir. 1961). "Conclusions, not substantiated by allegations of fact with some probability of verity, are not sufficient to warrant a hearing." *O'Malley*, 285 F.2d at 735 (citations omitted). A motion that merely states general conclusions of law without substantiating allegations with facts is without legal merit. *Loum v. Underwood*, 262 F.2d 866, 867 (6th Cir. 1959); *United States v. Johnson*, 940 F. Supp. 167, 171 (W.D. Tenn. 1996).

To warrant relief under 28 U.S.C. § 2255 because of constitutional error, the error must be one of constitutional magnitude which had a substantial and injurious effect or influence on the proceedings. *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993) (citation omitted) (§ 2254 case); *Clemmons v. Sowders*, 34 F. 3d 352, 354 (6th Cir. 1994). *See also United States v. Cappas*, 29 F.3d 1187, 1193 (7th Cir. 1994) (applying *Brecht* to a § 2255 motion). If the sentencing court lacked jurisdiction, then the conviction is void and must be set aside. *Williams v. United States*, 582 F. 2d 1039, 1041 (6th Cir.), *cert. denied*, 439 U.S. 988 (1978). To warrant relief for a non-constitutional error, petitioner must show a fundamental defect in the proceeding that resulted in a complete miscarriage of justice or an egregious error inconsistent with the rudimentary demands of fair procedure. *Reed v. Farley*, 512 U.S. 339, 354 (1994); *Grant v. United States*, 72 F. 3d 503, 506 (6th Cir.), *cert. denied*, 517 U.S. 1200 (1996). In order to obtain collateral relief under § 2255, a petitioner must clear a significantly higher hurdle than would exist on direct appeal. *United States v. Frady*, 456 U.S. 152 (1982).

4

### III. Analysis

#### A. Ineffective Assistance of Trial Counsel

A petitioner alleging ineffective assistance of counsel must satisfy a two-part test. *Stickland v. Washington*, 466 U.S. 668, 687 (1987). *See also*, *Huff v. United States*, 734 F.3d 600, 606 (6th Cir. 2013). First, the Petitioner must establish, by identifying specific acts or omissions, that counsel's performance w*a*s deficient and that counsel did not provide "reasonably effective assistance," as measured by "prevailing professional norms." *Rompilla v. Beard*, 545 U.S. 374, 380 (2005). Counsel is presumed to have provided effective assistance, and the Petitioner bears the burden of showing otherwise. *Mason v. Mitchell*, 320 F.3d 604, 616-17 (6th Cir. 2003); *see also Strickland*, 466 U.S. at 689 (a reviewing court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that . . . the challenged action might be considered sound trial strategy") (internal citation omitted).

Second, the Petitioner must demonstrate "a reasonable probability that, but for [counsel's acts or omissions], the result of the proceedings would have been different." *Strickland*, 466 U.S. at 694. "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id.* at 691; *see also Smith v. Robbins*, 528 U.S. 259, 285-86 (2000). The Court is not required to analyze both prongs of the *Strickland* test as to every claim. *Strickland*, 466 U.S. at 697. Indeed, the Supreme Court recommended that, "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed." *Id.*; accord U*nited States v. Hynes*, 467 F.3d 951, 970 (6th Cir. 2006).

##### 1. Failure to Investigate and Call Expert Rebuttal Witnesses

Petitioner faults trial counsel for failing to "present any rebuttal witness to challenge the government's misleading statistical evidence,"[3] and failing to use "a rebuttal forensics and toxicology expert from the University of Alabama due to lack of defense funds and the expert's unavailability during the summer months." [Doc. 146 at 25]. Petitioner also argues that, lacking the referenced expert, counsel should have "allow[ed] Dr. Hancock to offer rebuttal testimony regarding the same misleading statistics." [*Id*.]. He further asserts that the "Court can not decide, before reviewing testimony addressed at an evidentiary hearing, whether trial counsel's . . . decision not to call or meticulously question witnesses was reasonable trial strategy . . ." [*Id*. at 27]. The government responds that "petitioner does not name any potential expert witnesses nor explain why, in his view, that institution would have been able to supply an expert for him," [Doc. 149 at 5], nor has the petitioner "provid[ed] an affidavit from any such witness, without which he cannot show that an expert would actually have testified as he desired, much less that the absence of such testimony prejudiced him." [*Id*.]

The government is correct on this issue. Petitioner has done nothing more than speculate here that an unnamed expert called to give unknown testimony would have made any difference in the outcome of his case. There is little doubt that trial counsel is obligated "to make reasonable investigation or to make a reasonable decision that makes particular investigation unnecessary." *Stewart v. Wolfenbarger*, 468 F.3d 338, 356 (6th Cir. 2007). Furthermore, the failure to call a particular witness or present crucial evidence may constitute ineffective assistance of counsel when it deprives a defendant of a substantial defense. *Hutchins v. Bell*, 303 F.3d 720, 749 (6th Cir. 2002). The government is correct, however, that petitioner must show specifically what it is that counsel should have investigated and how it would have affected the outcome of the

---

3   Petitioner never specifically identifies the "statistical evidence" to which he refers.

case. *United States v. Robson*, 307 Fed. App'x 907, 911 (6th Cir. 2009). *See also Rompilla v. Beard*, 545 U.S. 374, 382-83 (2005). Petitioner has not made that showing here.

Petitioner relies on *Leonard v. Michigan*, 287 F. Supp. 2d 765, 792 (E.D. Mich. 2003), as a case "indistinguishable from Dr. Hancock's case." [Doc. 146 at 27]. That case is, however, easily distinguishable. In *Leonard*, at the time of counsel's appointment, an expert witness had been identified and consulted by prior counsel and had provided an opinion that "various deficiencies . . . existed with respect to the admissibility and reliability of the [critical] DNA evidence" in the case. 287 F. Supp. 2d at 790. Counsel, however, did not contact the expert until four days before the suppression hearing and the expert was unable to attend the suppression hearing. Counsel then made no attempt "to secure the services or advice of any other expert prior to the suppression hearing, even though his missing expert would have provided him with these names." *Id*. The court found ineffective assistance of counsel. *Leonard* is thus distinguishable because there the identity of the expert was known, unlike in this case, and the expert had rendered a specific favorable opinion which would have contested the primary evidence against the defendant, also unlike this case.

### 2. Denial of Right to Testify

As for petitioner's alternative claim that, in lieu of a third-party expert, counsel should have "allow[ed] Dr. Hancock" to testify, that claim also fails. First of all, although petitioner's identity is known, his argument suffers from the same deficiencies noted above. Petitioner has not stated the substance of his testimony or how it might have affected the outcome of his case. More fundamentally, however, there is a second flaw in petitioner's claim. Petitioner now claims that counsel "precluded him from testifying in his own defense," and that he "strongly disavows his previous affirmations to the court." [Doc. 146 at 31]. He claims that he was

7

"coached" by his attorney as to how to respond to the Court's query, that counsel "even subtly threatened him into not testifying, and that counsel never fully informed him of his right to testify in his own defense." [*Id*. at 41]. Petitioner claims that counsel had threatened to "withdraw from" or "abandon" petitioner's case if he told the Court of his desire to testify. [*Id*. at 41-42]. Dr. Hancock asserts that he "did all that he could possibly do to exercise his right to testify in his own defense." [*Id.* at 42].

This issue is governed and foreclosed by clear Sixth Circuit precedent. In *United States v. Stover*, 474 F.3d 904 (6th Cir. 2007), the Sixth Circuit stated:

> Although the ultimate decision whether to testify rests with the defendant, when a tactical decision is made not to have the defendant testify, the defendant's assent is presumed. [*United States v. Joelson*, 7 F.3d 174, 177 (9th Cir. 1993) ] . . . . Barring any statements or action from the defendant indicating disagreement with counsel or the desire to testify, the trial court is neither required to *sua sponte* address a silent defendant and inquire whether the defendant knowingly and intentionally waived the right to testify, nor insure that the defendant has waived the right on the record. *Joelson*, 7 F.3d at 177. *See also United States v. Ortiz*, 82 F.3d 1066, 1069 n. 8 (D.C. Cir. 1996) (noting the agreement of the First, Third, Fifth, Seventh, Ninth, Tenth, and Eleventh Circuits that the trial court does not have a duty to *sua sponte* conduct an on-the-record colloquy regarding waiver) . . . .
>
> A defendant who wants to testify can reject defense counsel's advice to the contrary by insisting on testifying, communicating with the trial court, or discharging counsel. *Joelson*, 7 F.3d at 177. At base, a defendant must "alert the trial court" that he desires to testify or if there is a disagreement with defense counsel regarding whether he should take the stand. *Pelzer [v. United States*, 105 F.3d 659 (Table), 1997 WL 12125, at * 2 (6th Cir. Jan. 13, 1997) (unpublished)]. When a defendant does not alert the trial court of a disagreement, waiver of the right to testify may be inferred from the defendant's conduct. Waiver is presumed from the defendant's failure to testify or notify the trial court of the desire to do so. *Joelson*, 7 F.3d at 177.

*Stover*, 474 F.3d at 908-09 (quoting *United States v. Webber*, 208 F.3d 545, 551 (6th Cir. 2000)).

8

Hancock did nothing to alert the Court to his desire to testify and the Court, under no duty to inquire, could have simply presumed that petitioner waived his right to testify. The Court went further, however, and specifically inquired about whether petitioner had decided not to testify and the voluntariness of his waiver of the right to testify. The following exchange took place between the Court and the petitioner:

> THE COURT: Dr. Hancock, your attorney has informed me that you will not be testifying in this case. I want you to understand that you have a Constitutional right not to testify in the case. By the same token, though, you have a right to testify if you wish to do so. The decision whether or not to testify is a personal one. That means that only you can make that decision. You can and should consider the advice of your attorney, but he cannot make the decision. It ultimately is one that you have to make. Is it your decision not to testify in this case?
>
> PETITIONER: Yes, your Honor.
>
> THE COURT: Has anybody pressured you or in any way coerced you into making that decision?
>
> PETITIONER: No, sir.
>
> THE COURT: You've made that decision on your own?
>
> PETITIONER: Yes, sir.

[Doc. 131 at 118-19]. Although petitioner now seeks to disavow his statements, he will not be permitted to do so. "[S]olemn declarations in open court carry a strong presumption of verity," *Blackledge v. Allison*, 431 U.S. 63, 74 (1977), and the Court is entitled to rely on those statements. Otherwise, petitioner would simply make a mockery of the Court. This issue is without merit.

### 3. Taxpayer Funding for Counsel and Expert Witness

Petitioner argues that, despite counsel's awareness that petitioner's funds were "running out" or "had run out," counsel "never timely raised the issue of lack of funding with the

9

trial court or requested a continuance of Dr. Hancock's trial to further investigate the available options." [Doc. 146 at 28]. He more specifically alleges that counsel should have sought Criminal Justice Act monies for investigative or expert services to refute testimony by government experts (doctors) that the drugs prescribed by Hancock were medically unnecessary. In conclusory fashion, Hancock alleges that "[s]uch an expert would have confirmed that the drugs prescribed . . . actually had a legitimate and therapeutic purpose . . ." [*Id*.]

This claim fails for several reasons. Petitioner has not specifically identified any investigative services which could have refuted testimony by government witnesses nor has he identified any expert who could have done so. He has not provided the name of an expert or an affidavit from any expert willing to testify, nor has he given the Court any indication of what the testimony would have been, except to allege, in conclusory fashion, that it might refute testimony from the government experts that the drugs prescribed by Hancock were not for legitimate and therapeutic purposes. In short, petitioner has not provided anything beyond speculation which would even warrant an evidentiary hearing. There is no evidence that petitioner's defense was hindered in any way by insufficient funding. This claim lacks merit.

### B. Ineffective Assistance of Appellate Counsel

Petitioner states his second ground as:

> Appellate counsel ignored Petitioner's numerous requests to raise the issue regarding the government's insufficiency of evidence. Petitioner contends that the proofs did not establish that he committed health care fraud, including health care fraud resulting in death, which required a showing that he "willfully" committed the crimes, i.e., that he acted with knowledge that his conduct was unlawful. Thus, counsel's error amounted to a failure to request/challenge the district court's lack of a Ratzlaf willfulness instruction.

[Doc. 146 at 5]. Petitioner claims that appellate counsel should have argued more broadly on

10

appeal that the evidence was insufficient to sustain a conviction for health care fraud, rather than focusing more narrowly on the convictions for health care fraud resulting in death. More specifically, counsel's contentions in the Sixth Circuit focused on the level of causation required for the enhanced penalty under § 1347(a)(2) where the offense "resulted in death," while petitioner claims he instructed counsel to argue "a stronger issue on appeal," i.e., whether he *willfully* committed health care fraud.[4] He claims that the Court's instruction that "the government is not required to prove that [Dr. Hancock] knew that his acts or omissions were unlawful" was given in error[5] and that other circuits have required a showing that defendant acted with knowledge that his conduct was unlawful, citing *United States v. Awad*, 551 F.3d 930, 938-41 (9th Cir. 2009) and *United States v. Franklin-El*, 554 F.3d 903. 908 (10th Cir. 2009).

The United States responds to this second claim only briefly. The government suggests that the issue now raised by petitioner was meritless and "counsel is not required to raise [ ] every non-frivolous claim on appeal." [Doc. 149 at 7 (citing *Coleman v. Mitchell*, 268 F.2d 417, 430-31 (6th Cir. 2001) and *Smith v. Murray*, 477 U.S. 527, 536 (1986))]. The government argues that petitioner has not shown that counsel did anything other than "winnow[ ] out weaker arguments on appeal" and "focus[ ] on those more likely to prevail," *see Smith* at 536, and has failed to show "the issue not presented 'was clearly stronger than issues that counsel did present.'" *Caver v. Straub*, 349 F.3d 340, 348 (6th Cir. 2003) (quoting *Smith v. Robbins*, 528 U.S. 259, 289 (2000)).

Petitioner's claim of ineffective assistance of appellate counsel fails for multiple reasons. First, it appears that the Court did not give the objected to instruction which was problematic in

---

[4]  Hancock argues, in conclusory fashion, that the "evidence at trial never established that he billed or received benefits from TennCare," i.e., a health care benefit program, and therefore he was not guilty of the health care fraud counts. There is no further development of the claim and the Court will not address it further. In any event, as Hancock later concedes, "some of the drugs were paid for through the TennCare program," .[Doc. 146 at 39]. Whether he actually billed TennCare directly is largely irrelevant.

[5]  Petitioner provides no citation to the record for this claim.

11

*Awad*. The transcript has been filed as document 136 and a word search of the document reveals no such instruction. As a result, the instruction found improper in *Awad* is missing in this case. Second, although the Sixth Circuit has not explicitly defined "willfully" for the purpose of a health care fraud charge brought under § 1347, the Court gave the jury a generally accepted definition of willfulness. The Court charged the jury that "[a] person acts 'willfully' when that person acts deliberately, voluntarily, and intentionally." [Doc. 136 at 40]. The Court did not, however, specifically charge the jury that the government, to prove that defendant acted willfully, had to prove that defendant acted with knowledge that his conduct was unlawful. *See Ratzlaf v. United States*, 510 U.S. 135 (1994).

In *United States v. Hunt*, 521 F.3d 636, 645 (6th Cir. 2008) (citing *United States v. White*, 492 F.3d 380, 393-94 (6th Cir. 2007)), the court set forth the elements of health care fraud under § 1347 as follows: "(1) knowingly devised a scheme or artifice to defraud a health care benefit program in connection with the delivery of or payment for health care benefits, items, or services; (2) executed or attempted to execute this scheme or artifice to defraud; and (3) acted with intent to defraud." The Court told the jury that the government had to prove that the defendant acted "with intent to defraud," i.e., "to act knowingly and with intention or the purpose to deceive or to cheat." [Doc. 136 at 42]. The Court further instructed the jury that "an 'intent to defraud' is accompanied ordinarily by a desire or purpose to bring about some gain or benefit to one's self or some other person or by a desire or a purpose to cause some loss to another." *Id*. at 142-43.

As noted above, the problematic instruction that was the subject of *Awad* was not given in this case. Even if it had been given, however, there would have been no prejudice to the petitioner. Just as the Court stated in *Awad*, where the jury instructions required proof that the defendant acted with an "intent to defraud," as they did here, "[n]o reasonable jury could have

12

found that a physician intended to deceive or cheat the Federal Government but did not know that conduct is unlawful . . ." *Awad*, 551 F.3d at 940. Thus, any failure on the part of counsel to request such an instruction did not prejudice petitioner in any way.

        C.        **The Supplemental Petition/*Burrage v. United States***

On March 29, 2012, the Sixth Circuit affirmed petitioner's convictions and sentence. [Doc. 139]. Petitioner then filed a *pro se* petition for writ of *certiorari* in the United States Supreme Court, [Doc. 141]. On October 1, 2012, the Supreme Court denied the petition, [Doc. 142]. Petitioner then filed his § 2255 motion on October 4, 2013[6], [Doc. 146]. On January 27, 2014, the United States Supreme Court decided *Burrage v. United States*, -- U.S. --, 134 S. Ct. 881 (2014) (holding that defendant who distributed drugs used by victim who died of a drug overdose after also using other drugs could not be convicted under penalty enhancement provision of Controlled Substance Act applicable when death results from use of the distributed substance unless such use is a "but-for" cause of the death).[7] More than a full year later, on February 2, 2015, Hancock filed a motion in the Sixth Circuit to recall the mandate and reconsider his case in light of *Burrage*.[8] At roughly the same time, Hancock filed in this Court a pleading entitled "Motion For Judicial Notice of the United States Supreme Court's Decision *Burrage v. United States* No. 12-7515 October term 2013." [Doc. 150]. After the government responded to Hancock's motion to recall the mandate and reconsider his case, the Sixth Circuit denied the

---

[6] Petitioner's § 2255 motion was not filed with the Court until October 4, 2013, but his acknowledgement on the memorandum filed in support of his motion states that he executed and submitted the document to prison authorities on September 27, 2013; thus, the petition is timely under the "mailbox" rule.

[7] The Court did not give a but-for instruction to the jury in this case but rather instructed the jury in the language of the statute that it must find beyond a reasonable doubt that death "resulted from" the use of the controlled substance. It is not at all clear that the instruction was improper under *Burrage*. As the Supreme Court made clear in *Burrage*, the "ordinary meaning" of "results from is that the outcome or harm would not have occurred were it not for the defendant's conduct." *Burrage*, 134 S. Ct. at 887-88. *See also United States v.Alvarado*, 816 F.3d 242, 248-49 (4th Cir. 2016). (concluding that the district court did not err by allowing the jury to rely on its general understanding of the phrase "results from.").

[8] Documents related to Hancock's Sixth Circuit filings are available on the Sixth Circuit's public website in case No. 10-6036.

13

motion on June 9, 2015, finding that "the proper remedy to attack a sentence in a final criminal proceeding lies under § 2255" and noted that Hancock had a pending § 2255 motion to vacate in the district court. The Sixth Circuit directed the district court to "decide in the first instance where [sic] *Burrage* announced a new substantive rule that applies retroactively because the decision 'narrow[ed] the scope of the criminal statute by interpreting its terms.' *Shriro v. Summerlin*, 542 U.S. 348, 351 (2004)." On June 26, 2015, petitioner filed a motion to amend and supplement his § 2255 petition on the basis of *Burrage*, [Doc. 154], and the Court granted the motion to amend, "subject to a later determination involving non-retroactivity or a statutory time-bar," on July 9, 2015, [Doc. 155].[9]

As this Court noted in its prior order, a federal prisoner has one year in which to file a § 2255 motion and this includes any amendments to the motion. 28 U.S.C. § 2255(f); *Mayle v. Felix*, 545 U.S. 644, 654 (2005); *Oleson v. United States*, 27 Fed. App'x 566, 570-71 (6th Cir. 2001) (citing cases). The limitations period generally runs from the day on which the judgment of conviction becomes final, 28 U.S.C. § 2255(f)(1), which means that petitioner's amendment would ordinarily be time-barred unless filed on or before October 1, 2013.[10] Clearly, if the limitations period begins to run from the date on which the judgment of conviction becomes final, the amendment raising the *Burrage* claim is untimely. There is, however, a provision of § 2255 which allows the statutory period to run, not from the date the conviction becomes final, but from "the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on

---

[9] The government has not responded to the amended § 2255 petition on the basis of *Burrage*. The Court has available to it, however, the government's response to Hancock's motion to recall the mandate and reconsider his case filed in the Sixth Circuit and no further response from the government is necessary in this Court.

[10] The Court's prior order erroneously noted that petitioner's conviction became final on October 2, 2012, when the Supreme Court rejected his petition for *certiorari;* however, it appears that the Supreme Court actually denied the petition on October 1, 2012.

14

collateral review." 28 U.S.C. § 2255(f)(3). As noted above, *Burrage* was decided on January 27, 2014. Likewise, whether the "new rule" is applicable to collateral review proceedings at all depends on whether the new rule is a substantive one which generally applies retroactively. *Shriro*, 542 U.S. at 351. When a Supreme Court decision "results in a new rule," that rule applies to all criminal cases pending on direct review. As to convictions that are already final, however, the rule applies only in limited circumstances. *Id.* (citation omitted). While new substantive rules generally apply retroactively, new procedural rules do not. *Id.*

Thus, this issue boils down initially to whether "*Burrage* announced a new substantive rule that applies retroactively." The Sixth Circuit has not decided whether *Burrage* applies retroactively to cases on collateral review and, as noted above, has directed this Court to decide the question in the first instance. Based on the virtually unanimous weight of authority from other courts, the Court concludes that *Burrage* is not retroactive to cases on collateral review and therefore affords Hancock no basis for relief.[11] *See Herrera v. Warden, FCC-Coleman-USP-1*, 2015 WL 77404 at * 2 (11th Cir. Jan. 7, 2015); *In re: Carlos Alvarez*, No. 14-10661-D (11th Cir. March 6, 2014); *United States v. Thomas*, 2016 WL 1070868 (W. D. Va. March 16, 2016); *United States v. Grady*, 2015 WL 4773236, at * 4 (W.D. Va. Aug. 12, 2015); *United States v. Edwards*, 2015 WL 3793807, (June 17, 2015); *Krieger v. United States*, 2015 WL 3623482 (S.D. Ill. June 10, 2015); *Harrington v. Holland*, 2015 WL 2065945 (E. D. Ky. May 4, 2015); *Stewart v. United States*, 89 F. Supp. 3d 993 (E.D. Wis. Feb. 5, 2015); *United States v. Bourlier*, 2014 WL 6750674, at * 2 (N. D. Fla. Dec. 1, 2014); *Powell v. United States*, 2014 WL 5092762 (D. Conn.

---

[11] It is unlikely *Burrage* would afford Hancock relief in any event since he does not claim he is actually innocent of the underlying conspiracy offenses but of the resulting in death or serious bodily injury enhancement. In other words, he claims he was not the but-for cause of death. *See Bousley v. United States*, 523 U.S. 614, 623-24 (1998) (holding that a claim of actual innocence means factual innocence, not legal innocence); *Darby v. United States*, 508 F. App'x 69, 71 (2d Cir. 2013) (noting that a claim of actual innocence does not apply where defendant merely claims innocence of a sentence enhancement).

15

Oct. 10, 2014); *Alvarez v. Hastings*, 2014 WL 4385703, at * 1 (S.D. Ga. Sept. 5, 2014); *Rutledge v. Cross*, 2014 WL 2535160 (S.D. Ill. June 5, 2014); *DeLa Cruz v. Quintana*, 2014 WL 1883707 at * 6 (E.D. Ky. May 1, 2014); *Taylor v. Cross*, 2014 WL 1256371 at * 3 (S.D. Ill. March 26, 2014). [12] [13]

**IV.    Conclusion**

For the reasons set forth above, the Court holds that petitioner's conviction and sentencing were not in violation of the constitution or laws of the United States and his motion to vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255 is DENIED.

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The Sixth Circuit Court of Appeals disapproves of the issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F. 3d 466 (6th Cir. 2001). The District Court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id*. at 467. Each issue must be considered under the standard set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473, 120 S. Ct. 1595 (2000). *Id.*

Under *Slack*, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." After reviewing each of Petitioner's claims, the Court finds that reasonable jurists could not conclude that petitioner's claims are adequate to deserve further review, with one exception. Although the full weight of authority supports the Court's holding that *Burrage v.*

---

[12]  Counsel's failure to anticipate a change in the law does not constitute ineffective assistance of counsel.

[13]  Although the defendant requested a causation instruction during the trial of this case, the Court chose to simply charge the language of the statute. The Court clearly did not give the but-for causation instruction as set forth in *Burrage*.

*United States* is not retroactive to cases on collateral review, the Sixth Circuit has not yet addressed the issue, and the Court will grant the certificate as to that limited issue, but the certificate will be denied as to all other issues.

A separate judgment will enter.

ENTER:

s/J. RONNIE GREER  
UNITED STATES DISTRICT JUDGE
